### 39352. ABBA GANA v. ABBA GANA.

Bell, Justice.

This is an appeal from a judgment of divorce and several post-judgment motions challenging, inter alia, service of process.

Both parties are Nigerian citizens. In 1971 they were married in a Nigerian Muslim ceremony. Appellant Shettima Abba Gana is a soldier, pilot, an employee of the Nigerian government, and in 1975 he and appellee Catherine Abba Gana came to the United States on non-immigrant visas so that he could undergo training at Fort Benning. They moved to Columbus in October 1977 and remarried in a civil ceremony on October 23, 1979. On February 5, 1982 Catherine filed a verified pertition for divorce, alleging that the couple had separated November 25, 1981; that her husband was outside this country's territorial limits; that although she thought he was only temporarily sojourning there, she did not know when or if he would

return to the marital residence at 4116 Curry Street, Columbus; and that his profession or occupation was unknown to her and his activities were strange and irregular. She prayed for appointment of a receiver for the marital assets and moved the court to order service of process by such means as the court determined would serve justice and suit the exigencies of the case. See OCGA § 9-11-4 (e) (i) (Code Ann. § 81A-104). Catherine supplemented her motion for service with her sworn testimony that although she knew locations where appellant might be found, she could not pinpoint his current residence. That same day the court issued an order directing that appellant be served by publication, by leaving a copy of the summons and complaint at 4116 Curry Street, and by sending a copy by registered mail to "the only known address for receiving mail of the Defendant, same being P. O. Box 236, Apapa Lagos, Republic of Nigeria. . . ." No affidavit in support of the motion for substituted service was presented to the court, and the record does not show, aside from the Apapa Lagos address, the possible locations Catherine mentioned during her testimony, nor is there any indication that she apprised the court of her reasons for believing appellant might or might not be found at those places.

Notice was published in the Columbus *Ledger* on February 15 and 22 and March 1 and 8, 1982, but no copy of the summons and complaint was left at the Columbus marital abode or mailed to the Nigerian post office box.

Appellant did not answer the petition, and on April 27, 1982[1] the court granted a divorce, gave appellee custody of the couple's children, and awarded her the marital assets which had been collected by a court-appointed receiver. These assets consisted of cash, certificates of deposit, liquid asset accounts, the marital home and furnishings, all valued by the receiver at $251,425, and Nigerian stock certificates of undetermined value.

On May 26, 1982, appellant moved for a new trial, or in the alternative to set aside the judgment. In support of his motions appellant filed an affidavit in which he averred that from February 6 through May 3, 1982 he had been outside the United States on assignment for the Nigerian government; that he had never received a copy of the summons and complaint; and that he had first learned

---

[1] The order was signed by the trial judge April 27, and appellee's attorney left it in the office of the clerk of the court on that date. That same day the clerk stamped the order, but failed to sign the stamp or record the order on the docket. On July 30, 1982 the court issued an order directing that the prior order be deemed entered April 27 nunc pro tunc. Appellant challenges the validity of this nunc pro tunc entry, but because of our result concerning service of process we do not reach this issue.

about the suit in the office of a Columbus attorney, James Patrick, on May 3.

A hearing on the motions was held June 4, 1982, at which Catherine was questioned regarding her verified allegation in the complaint that appellant had then been outside the country. She responded that she had "presumed him to be but I don't really know. I have no proof of whether he was here or anywhere in the world. All I know is he was not with me so I just presumed him to be outside." She also testified that she and appellant had the Apapa Lagos address prior to coming to this country, and that she did not know whether mail sent to that address would reach appellant. In addition, Catherine stated that subsequent to the filing of this suit and the issuance of the court's order for substituted service appellant was in phone contact with her, during which she told him about the suit; however, she did not testify, and the record does not otherwise disclose, to what extent she may have told appellant the details of this suit's subject matter.

In the course of the June 4 hearing it also became known that on March 11 Patrick, who was representing appellant at the hearing, had checked out and examined the clerk of the court's file of this case. The court asked Patrick whether he represented appellant at the time he checked out the case file, and Patrick responded that appellant had not retained him until May 7, 1982. Patrick did not indicate whether he gave appellant any information about the suit prior to May 3.

The court denied appellant's motions, finding in particular that, as appellee had testified, appellant had been in telephone contact with her prior to the April 27 judgment, that she had apprised him of the suit, and that he had refused to disclose his whereabouts. We granted Shettima's application for appeal, and we now reverse.

1) Although appellant enumerates several alleged errors, appellee states in her brief that "[t]he true issue in this case is notice," and we agree in the sense that it is the threshold issue and is also a dispositive issue. Because publication was the only one of three separate court-ordered methods of service which was carried out, our initial analysis is confined to it.

Appellant contends that publication service in this case did not meet the constitutional requirements of due process, but appellee counters that this is an in rem action, and that Shettima was legally served by publication. Without deciding whether the instant suit is an in rem proceeding, we first observe that although the distinction between in rem and in personam divorce proceedings may be a factor in the determination of a trial court's territorial jurisdiction, see *Anthony v. Anthony,* 237 Ga. 753, 754 (229 SE2d 609) (1976); but see Restatement, Second, Judgments, Introductory Note 22-26

(Territorial Jurisdiction), §§ 4-9, it is inapposite in determining if a party may resort to notice by publication. In the latter inquiry, regardless of whether a proceeding is in rem or in personam, due process requires that a chosen method of service be reasonably certain to give actual notice of the pendency of a proceeding to those parties whose liberty or property interests may be adversely affected by the proceeding. *Johnson v. Mayor &c. of Carrollton,* 249 Ga. 173 (288 SE2d 565) (1982); *Allan v. Allan,* 236 Ga. 199, 205 (223 SE2d 445) (1976), cited in Restatement, supra § 2, Reporter's Note at 45; Mennonite Board of Missions v. Adams, —— U. S. —— (103 SC ——, 77 LE2d 180, 185, fn. 3) (1983).

Because notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts. *Johnson,* supra; *Walker v. Ferrier,* 154 Ga. App. 717 (270 SE2d 30) (1980); Restatement, supra § 2 (3) & Comment g; Mennonite Board of Missions, supra, fn. 4. See Mullane v. Central Hanover Bank &c. Co., 339 U. S. 306, 317 (70 SC 625, 94 LE 865) (1950). See generally Annot., Sufficiency of Affidavit as to Due Diligence in Attempting to Learn Whereabouts of Party to Litigation, for the Purpose of Obtaining Service by Publication, 21 ALR2d 929 (1952).

In this regard, each case has its own practicalities and peculiarities, and this court cannot lay down a sweeping rule applicable to all determinations whether reasonable diligence has been exercised. In particular, it must be kept in mind that there may occur situations where a more intensive search or, perhaps, any search is impractical or fruitless. *Melton v. Johnson,* 242 Ga. 400, 403 (249 SE2d 82) (1978); *Johnson v. Mayor &c. of Carollton,* supra, at 175; Mullane, supra at 317-318.

However, it is clear that, at a minimum, the decision whether due diligence has been exercised cannot be left to the movant for publication service. Instead, it is the duty of the courts to determine whether the movant has exercised due diligence in pursuing every reasonably available channel of information. And, although it is the trial court which first passes upon the legality of notice, the appellate courts must independently decide whether under the facts of each case the search for the absentee interested party was legally adequate, *Henry v. Hiawassee Land Co.,* 246 Ga. 87, 89 (269 SE2d 2) (1980), in that a proper balance was struck "between the procedural ideal that actual notice be given to all interested persons and the practical exigencies that inhibit realization of that ideal."

Restatement, supra § 2, Comment a, at 35.

The facts of this case inescapably lead to the conclusion that as a matter of law Catherine was not reasonably diligent in seeking her husband's whereabouts. First, it does not appear that an attempt to locate Shettima would have been impractical or fruitless, since, despite appellee's protestations of general ignorance about the activities and location of her husband of ten years, the record shows there were obvious channels of information which were reasonably available to her.[2] The typical divorce complainant usually knows significant background information about the missing spouse, and therefore usually has many feasible methods of tracking down the absentee. Bearstop v. Bearstop, 377 A2d 405, 408 (D. C. 1977). Here, it is clear from the record that Catherine was aware of her husband's military and private flight training in this country, the marital assets held in his name, and his non-immigrant status. A reasonable inference from this data is that potential. sources of information about appellant's whereabouts included the United States military, the private flight school he attended, the Nigerian embassy or consulate, the banks and broker with which appellant had accounts, United States immigration authorities, and, in particular, appellant's Nigerian relatives. See Bearstop, supra, at 410-411.

Second, despite the existence of these potential sources, the record does not disclose that appellee made an honest and well directed effort to use them, and, in contrast, shows by her own admission that she did nothing to affirmatively seek out Shettima's whereabouts.

Because the record in this case clearly reveals that reasonably available channels of possible information were open to appellee, and because it further appears that she made no significant attempt to ascertain appellant's location, we conclude that the trial court erred in authorizing service by publication.

2) Appellee also claims that any defects in the published service

---

[2] Where it appears from the record, either expressly or inferentially, that the applicant for publication service either knew of a reasonably available possible channel of information concerning the movant's whereabouts, or that the applicant could have discovered such a channel through the exercise of reasonable diligence, the court should assume, absent a contrary showing by the applicant, that the movant's address could have been ascertained by reasonably diligent efforts. See Mennonite Board of Missions, supra at fn. 4; *Oakley v. Anderson,* 235 Ga. 607, 610 (221 SE2d 31) (1975). Contra, Bell Federal Sav. &c. Assn. v. Horton, 376 NE2d 1029, 1033 (Ill. App. 1978) (movant to set aside has threshold burden to show that reasonably diligent use of reasonably available channel of information would have resulted in discovery of his identity or whereabouts); accord, First Federal Sav. &c Assn. v. Brown, 393 NE2d 574, 578-579 (Ill. App. 1979).

were cured because Shettima had actual notice through their phone conversations and Patrick's examination of the file. Again, we disagree.

We have previously held that an interested party's actual knowledge of pending proceedings is of no consequence unless he was legally served or waived service. *Henry v. Hiawassee Land Co.,* supra, at 88; *Smith v. Smith,* 244 Ga. 230 (1) (259 SE2d 480) (1979); *Dunn v. Dunn,* 221 Ga. 368 (1) (144 SE2d 758) (1965). Although there is some support for appellee's argument that the constitutional requirement of adequate notice can under proper circumstances be fulfilled by actual notice, Restatement, supra § 2, Comment d, (3), we note that even under the Restatement, Second view the notice must be sufficiently well drawn to seem official in tenor and to indicate to the notified person that he should take it seriously. Id. Comment d. In the instant case appellee showed that the clerk of the court's file was inspected prior to judgment by an attorney who was retained by appellant after judgment was taken, but did not show what, if anything, the attorney communicated about the suit to appellant prior to judgment. Appellee also showed that prior to judgment she informed appellant over the telephone about the existence of the suit, but did not show what extra details, if any, she told him. Thus, the only probative evidence in the record concerning actual notice to appellant was to the effect that he was orally told that a divorce action had been filed against him; such cursory notice clearly fails to rise above the level of casual information and rumor which are disapproved by the Restatement. Restatement, supra, Comment d & Illustration 3.

Appellee vigorously argues that our holding in *Melton v. Johnson,* supra, should lead us to a different result. In that case, plaintiffs attempted personal service upon Melton, but he secreted himself within the state and evaded all efforts to serve him. Counsel for plaintiffs succeeded in talking with Melton over the telephone; he told Melton about the suit and asked him to allow himself to be served but Melton declined. Plaintiffs then moved for an order providing for service by publication and by mail. The motion was granted, service was made as ordered, and default judgments were entered against Melton. He moved to set aside, and his motion was denied. On appeal we held that because Melton had secreted himself to avoid the process server, we would pay no heed to his assertion that he had been subjected to fundamental unfairness. *Melton,* supra. Catherine contends that because Shettima was informed of the suit and refused to disclose his whereabouts his claim of a denial of due process should similarly be disallowed, but her argument neglects the fact that her telephone contact with her husband came *after* her

application for an order for constructive service and the grant thereof. *Melton,* on the other hand, is consistent with *Johnson v. Mayor &c. of Carrollton,* supra, and distinguishable from the instant case since the *Melton* plaintiffs had clearly fulfilled the constitutional requirement of exercising reasonable diligence in attempting to locate and personally serve Melton *prior* to moving for constructive service. See *Walker v. Ferrier,* supra.

Therefore, we conclude that the actual notice appellant received prior to judgment was of no legal consequence. For the reasons stated in this division and in Division (1), supra, the court erred by refusing to set aside the judgment.

*Judgment reversed. All the Justices concur.*

DECIDED JULY 15, 1983 —
REHEARING DENIED JULY 28, 1983.

*Davidson, Kilpatrick & Calhoun, Paul V. Kilpatrick, Jr., James D. Patrick, Jr.,* for appellant.

*Hirsch, Beil & Partin, Milton Hirsch, David L. Hirsch,* for appellee.

*Griffin Bell, Renee Huskey,* amicus curiae.