BENTON, Judge,
dissenting.
On appeal, Ms. Cox’s sole contention is that Florida courts should give the 1972 judgment she obtained against Mr. Clark in South Carolina full faith and credit. Insofar as the judgment dissolved the parties’ marriage, her position is well taken. But the trial court properly declined to give full faith and credit to the child support provisions of the South Carolina judgment. The South Carolina court never obtained jurisdiction over Mr. Clark, even though it had jurisdiction over the res of the marriage. Service on Mr. Clark by publication in a South Carolina newspaper — without mailing a copy of the complaint and summons to his last known address — did not confer in personam jurisdiction on the South Carolina court.
In his response to notice of registering foreign support order and affirmative defenses thereto, the former husband framed the issues tried below. The first affirmative defense pleaded was denominated fraud:
[Petitioner committed fraud upon the [South Carolina] court in securing the original order which she now seeks to enforce. The petitioner was aware of the residence and address of respondent at the time of *656 the dissolution, yet did not have him served personally, but instead fraudulently served respondent by publication in an area where petitioner knew he did not reside. Further, the allegations and finding of fact contained within the [South Carolina decree] based upon petitioner’s testimony are untrue and constitute deliberate fraud.
The Florida trial court’s final judgment vacating the registration of foreign support order characterizes this defense as “fraud (attacking the South Carolina judgment for lack of jurisdiction with respect to matters of support).” The Florida trial court ruled that “the South Carolina court did not have personal jurisdiction” over Mr. Clark, and so lacked jurisdiction with respect to matters of support.

Question Open

As a preliminary matter, the question whether the South Carolina court acquired in personam jurisdiction in 1972 is not foreclosed by the South Carolina judgment entered then. The rule is that “the judgment of a state court should have the same credit, validity, and effect, in every other court in the United States, which it had in the state in which it was pronounced.” Hampton v. M’Connel, 16 U.S. (3 Wheat.) 234, 235, 4 L.Ed. 378, 379 (1818)(Marshall, C.J.). It is clear that the jurisdictional question would be open in South Carolina.
In South Carolina, a divorce decree does not render the question of the divorce court’s jurisdiction over a husband for support purposes res judicata where the “[hjusband did not appear to contest jurisdiction in the divorce action.” Crowe v. Crowe, 289 S.C. 330, 345 S.E.2d 498, 499 (1986). The present case differs from Rodriguez v. Nasrallah, 659 So.2d 437 (Fla. 1st DCA), review denied, 666 So.2d 144 (Fla.1995) and Baker v. Bennett, 633 So.2d 91 (Fla. 4th DCA), cert. denied; — U.S. —, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994), where the jurisdictional question was “expressly litigated and decided,” Baker, 633 So.2d at 93, in the foreign forum. The former husband here did not appear and litigate the question in South Carolina.
A South Carolina “judgment, void for lack of jurisdiction over a defendant, may be collaterally attacked in a second proceeding unless the jurisdictional question has already been adjudicated between the parties.” Crowe, 345 S.E.2d at 499. Whatever doubt may have been cast on the reach of this rule by Yarbrough v. Collins, 293 S.C. 290, 360 S.E.2d 300 (1987), the rule unquestionably applies where the “publication affidavit” is fraudulent. Id. 360 S.E.2d at 301; Prevatte v. Prevatte, 297 S.C. 345, 377 S.E.2d 114, 116 (Ct.App.1989).

Question Decided

The pertinent South Carolina statute in effect at the time[1] required not only publication, but also that a copy of the summons be mailed to the defendant, in order to effect constructive service.[2] Since the order of publication dispensing with the requirement of mailing was — the court below implicitly found — predicated on a false affidavit, the South Carolina court did not obtain jurisdiction under the statute.[3]
*657 Viewed in a light most favorable to the former husband, the evidence showed that the wife and her counsel knew the former husband’s address on June 12, 1972, when they petitioned for the order of publication and filed an affidavit in support claiming that the former husband’s “whereabouts are unknown.” Based on this misrepresentation, the Lexington County Family Court in South Carolina entered an order of publication erroneously finding that the former husband’s whereabouts were unknown and ordering “that the mailing of copies of the Summons and Complaint be dispensed with.”
On January 27, 1972, the former wife’s attorney had sent a letter to the former husband at his APO address in San Francisco reporting that the former wife had “conferred with [the attorney’s] office concerning [its] representing her in a divorce action” and requesting the husband’s views on this development. On March 26, 1972, the former husband responded in a letter from Quang Ngai, Viet Nam, which reached the attorney. This correspondence came in evidence below.
The former husband testified that he received another letter from the former wife’s attorney in October of 1972, which informed him that the date of the divorce hearing had been moved from October 1972 to November 1972, but that he never received a complaint or any other legal document in connection with the proceeding until December of 1973, when he received a copy of the divorce decree from his former wife’s attorney.
In ruling that “the South Carolina court did not have personal jurisdiction over the respondent,” the court below must be deemed to have credited the former husband’s evidence in support of the allegations he made in his affirmative “fraud” defense. We are obliged to respect this view of the evidence even in the absence of explicit findings of fact. “In this case we are able to ascertain the trial court’s unstated findings necessary to the conclusion it reached. Our duty in these circumstances is to accept the evidence favorable to the party prevailing below and disregard the conflicting evidence [if any] supporting appellant’s position.” Jacquin-Florida Distilling Co. v. Reynolds, Smith and Hills, Architects-Engineers-Planners, Inc., 319 So.2d 604, 607 (Fla. 1st DCA 1975). See Warn Indus, v. Geist, 343 So.2d 44 (Fla. 3d DCA 1977), cert. denied, 353 So.2d 680 (Fla.1977); Cape Publications, Inc. v. Adams, 336 So.2d 1197, 1199 (Fla. 4th DCA 1976), cert. denied, 348 So.2d 945 (Fla.1977), and cert. denied, 434 U.S. 943, 98 S.Ct. 440, 54 L.Ed.2d 305 (1977). I respectfully dissent.

.Section 10-454, South Carolina Code Annotated (Law.Co-op.l962)(renumbered as section 15-9-740), provided that:
The order of publication shall direct the publication to be made in one newspaper, to be designated by the officer before whom the application is made, most likely to give notice to the person to be served and for such length of time as may be deemed reasonable not less than once a week for three weeks. The court, judge, clerk, master or judge of probate shall also direct that a copy of the summons be forthwith deposited in the post office directed to the person to be served at his place of residence, unless it appears that such residence is neither known to the party making the application nor can, with reasonable diligence, be ascertained by him.
(Emphasis added.)

. "Service need not be made to the party's actual address so long as it is made to an address where there is a reasonable expectation that service will be delivered to the party." United Home Fed. v. Rhonehouse, 76 Ohio App.3d 115, 601 N.E.2d 138, 143 (1991). It "is not uncommon for residences to bear post office box addresses.” Townsend v. Hanks, 140 A.D.2d 162, 527 N.Y.S.2d 415, 416 (1988).

. It is therefore unnecessary to address the underlying constitutional question of procedural due. process. See Schroeder v. City of New York, *657 371 U.S. 208, 211, 83 S.Ct. 279, 282, 9 L.Ed.2d 255, 258 (1962) (“[N]ewspaper publications and posted notices in the circumstances of this case did not measure up to the quality of notice which the Due Process Clause of the Fourteenth Amendment requires.”); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Abba Gana v. Abba Gana, 251 Ga. 340, 304 S.E.2d 909, 912 (1983)("[D]ue process requires that the chosen method of service be reasonably certain to give actual notice of the pendency of proceedings to those parties whose liberty or property interests may be adversely affected by the proceeding^]” if feasible.).