A09A1384. TAYLOR v. PADGETT et al.

(684 SE2d 434)

MILLER, Chief Judge.

Tonya and Dan Padgett ("the Padgetts"), paternal grandparents of the minor children, M. T. and K. T. ("the children"), filed a deprivation petition in Catoosa County Juvenile Court. The children's mother, Morgan Taylor, appeals from the juvenile court's order of adjudication and disposition granting custody of her children to the Padgetts, arguing that the juvenile court erred in (i) authorizing service by publication on her without determining whether the Padgetts had made diligent efforts to find her, in violation of her rights to due process and counsel; (ii) exercising personal jurisdiction over her despite insufficient service of process; (iii) failing to set aside its adjudication order based on insufficient service of process; (iv) exercising subject-matter jurisdiction over

what is, in fact, a custody controversy, which is within the exclusive jurisdiction of the superior court; and (v) awarding custody to the Padgetts until the children reach the age of 18 in violation of OCGA § 15-11-58 (i). Taylor also appeals from the juvenile court's order denying Taylor's motion for review and modification. Given that the Padgetts failed to exercise reasonable diligence to find Taylor, the trial court erred in granting service by publication, and we therefore reverse.

The record shows that on March 30, 2007, the Padgetts filed a deprivation petition in juvenile court, alleging that the children were deprived because Taylor "is failing to provide necessities for the [children]" and because their father, Michael Zachary Taylor ("Zachary"), "has no driver's license and is unable to transport said children[,] if necessary." On the same day, the juvenile court held a 72-hour hearing on the Padgetts' petition, in which the Padgetts, their counsel, and Zachary were present. Taylor was not present. Tonya Padgett ("Tonya") testified that Zachary and his wife, Taylor, were separated, and Taylor was living in Rome with the children. According to Tonya, she and her husband had been caring for the children every other weekend, but a few days after Christmas 2006, Taylor called her and asked her to pick up the children. Tonya testified that the children's stepfather told her that Taylor had left with a truck driver a couple of days before, and Taylor told him that Tonya "would be there to pick up [M. T.]." Thereafter, the Padgetts picked up both children from the stepfather with two garbage bags full of clothes and toys and two social security cards.

Zachary testified that he called Taylor to notify her about the 72-hour hearing, and she told him that she was not coming "without her papers being served." When the Padgetts' counsel asked Zachary whether he had an address where Taylor could be served, he stated that Taylor told him that she had been "living in a truck" for a while and that was another reason she could not attend the hearing. Thereafter, the juvenile court issued an order awarding temporary custody of the children to the Padgetts, and scheduled a date for an adjudicatory hearing. The juvenile court also granted the Padgetts' motion for service by publication upon Taylor although no written motion for service by publication or affidavit in support had been filed with the juvenile court.

After the Padgetts effected service by publication on Taylor in Catoosa County, the juvenile court held an adjudicatory hearing on June 11, 2007 and found that the children were deprived in that Taylor lacked stable housing, had no job or means of income, and had not seen the children since January 2007, and Zachary was unable to care for the children. The juvenile court granted permanent custody of the children to the Padgetts until the children reached the age of

18. Taylor was not present for the hearing.

Thereafter, Taylor filed a motion for review and modification to obtain custody of her children, which the juvenile court denied following a hearing. During the hearing on her motion, Taylor testified that on June 11, 2007, she was living at her grandmother's house in Rome. Contrary to Zachary's prior testimony, Taylor indicated that she had no notice of the 72-hour hearing. Further, Taylor testified that she had not been served with a summons of the Padgetts' deprivation petition and never received notice of the adjudicatory hearing. Zachary testified that he never informed Taylor about the Padgetts' deprivation petition, and that both he and Tonya knew that Taylor was living in Rome with her grandmother before June 11, 2007.

1. Taylor argues that the juvenile court erred in authorizing service by publication when it failed to determine if the Padgetts were diligent in their efforts to find her, in violation of her rights to due process and counsel. Given that the Padgetts failed to exercise any effort to find Taylor despite having a reasonable means to contact or locate her, we agree.

> [A]lthough it is the trial court which first passes upon the legality of notice [to a defendant], the appellate courts must independently decide whether under the facts of each case the search for the absentee interested party was legally adequate, . . . in that a proper balance was struck between the procedural ideal that actual notice be given to all interested persons and the practical exigencies that inhibit the realization of that ideal.

(Citations and punctuation omitted.) *Abba Gana v. Abba Gana*, 251 Ga. 340, 343-344 (1) (304 SE2d 909) (1983).

"[D]ue process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Saxton v. Davis*, 262 Ga. App. 72, 73 (1) (584 SE2d 683) (2003).

> Because notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that *reasonable diligence has been exercised* in attempting to ascertain their whereabouts.

(Citations omitted; emphasis supplied.) *Abba Gana*, supra, 251 Ga. at

343 (1). "[T]he decision whether due diligence has been exercised cannot be left to the movant for publication service." Id. Rather, "it is the duty of the courts to determine whether the movant has exercised due diligence in pursuing every reasonably available channel of information." Id.

These due process requirements are reflected in OCGA § 15-11-39.1 (b), which authorizes service by publication in juvenile court proceedings:

> If, *after reasonable effort*, a party to be served with a summons cannot be found and such party's post office address cannot be ascertained, whether he or she is within or outside this state, the court may order service of the summons upon him or her by publication in accordance with Code Sections 9-11-4 and 9-11-5. The hearing shall not be earlier than five days after the date of the last publication.

(Emphasis supplied.) See also *Williams v. Jackson*, 273 Ga. App. 207, 208 (614 SE2d 828) (2005) (service by publication "does not require a showing that service has been attempted but only that the party to be served has departed from the state, or cannot, after due diligence, be found within the state, or conceals himself to avoid the service of summons") (citation and punctuation omitted). OCGA § 9-11-4 (f) (1) (A) authorizes service by publication upon a defendant if he or she "cannot, after due diligence, be found within the state, . . . and that fact shall appear, by affidavit, to the satisfaction of the judge or clerk of the court."

Here, the juvenile court concluded that Taylor "cannot be found with due diligence within the State of Georgia[ ]" without any competent evidence to support that finding. The Padgetts did not file a written motion for service by publication and supporting affidavit as required by statute. Nor does the brief evidence adduced at the 72-hour hearing indicate that the Padgetts could have shown the requisite due diligence. The transcript reflects that Taylor previously lived in Rome, Georgia; that Zachary had called Taylor to notify her of the 72-hour hearing; and during that conversation, Taylor told him she was living in a truck. Given that Zachary had Taylor's telephone number and, in fact, was able to notify her by phone of the 72-hour hearing, the Padgetts had some means of communicating with Taylor. Tonya also indicated that Taylor tried to see the children on March 17, 2007, less than two weeks before the 72-hour hearing. The Padgetts also could have contacted Taylor's relatives to ascertain Taylor's whereabouts. For example, the record reflects that Taylor lived with her grandmother in Rome on or around June 11,

2007, and her grandmother might have had information about Taylor's whereabouts. Further, the Padgetts could have attempted to serve Taylor personally or by registered or certified mail at her prior address in Rome. OCGA § 15-11-39.1 (a).[1] Despite the existence of these reasonably available channels of information, the Padgetts pursued none of them prior to obtaining an order for service by publication upon Taylor. *Pierce v. Pierce*, 270 Ga. 416, 418 (511 SE2d 157) (1999) (because movant for service by publication had several ways to find his wife, including contacting wife's attorney or her parents or directing mail to her former marital address, movant did not use reasonably diligent and honest efforts to find his wife). The juvenile court, moreover, failed to place any burden on the Padgetts to determine what notice *they* had given to Taylor of *their* deprivation petition and simply relied on evidence about the father's efforts to contact Taylor. Finally, in its order granting service by publication, the juvenile court stated that it was relying on the oath made by the Padgetts' counsel in concluding that Taylor "cannot be found with due diligence within the State. . . [.]" The transcript from the 72-hour hearing, however, is devoid of any testimony from, or any oath given by, the Padgetts' counsel concerning any efforts she made to find Taylor.

Accordingly, the record fails to support the juvenile court's determination that service by publication was proper. See *In the Interest of E. C.*, 271 Ga. App. 133, 135 (1) (609 SE2d 381) (2004) (juvenile court commits reversible error "where there is no legal evidence to support [its] ruling") (punctuation and footnote omitted); see also *In the Interest of J. B.*, 140 Ga. App. 668, 674 (231 SE2d 821) (1976) ("service by publication is statutorily recognized and constitutionally permissible [upon father] *if* the father's address is unknown and cannot be ascertained with reasonable diligence") (emphasis in original). Compare *In the Interest of M. J. B.*, 238 Ga. App. 833, 834 (1) (520 SE2d 497) (1999) (Department made a reasonable effort to locate the mother where it filed an affidavit showing its efforts to locate the mother and the caseworker testified at the hearing that mother's whereabouts were unknown and the mother failed to contact the Department about the child for more than a year).

---

[1] OCGA § 15-11-39.1 (a) provides:

If a party to be served with a summons is within this state and can be found, the summons shall be served upon him or her personally at least 24 hours before the hearing. If a party to be served is within this state and cannot be found *but his or her address is known or can with reasonable diligence be ascertained,* the summons may be served upon such party by mailing him or her a copy thereof by registered or certified mail or statutory overnight delivery at least five days before the hearing. . . .
(Emphasis supplied.)

2. Taylor argues that the juvenile court erred in entering a custody award·when it lacked personal jurisdiction over her due to insufficient service of process. In light of our disposition in Division 1, we agree that the juvenile court lacked personal jurisdiction over Taylor based on its improper grant of service by publication. *McDade v. McDade*, 263 Ga. 456, 458 (2) (435 SE2d 24) (1993) (where there was no showing that defendant had received, or waived receipt of, actual notice of the lawsuit, or that reasonable diligence had been exercised in attempting to find her, the trial court erred when it exercised jurisdiction over defendant by entering its order and judgment); *Abba Gana*, supra, 251 Ga. at 344 (1).

3. Taylor argues that the trial court erred in failing to set aside its adjudication order when her physical location was known and service was never attempted. Given that the juvenile court lacked personal jurisdiction over Taylor for insufficient service of process, we agree. OCGA § 15-11-40 (a) (2) (juvenile court order may be set aside if the court lacked jurisdiction over a necessary party).

For the reasons set forth above, we are constrained to reverse and vacate the juvenile court's order of adjudication and disposition based on its improper grant of service by publication upon Taylor. In light of our disposition, we need not reach the remaining enumerations of error.

*Judgment reversed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 6, 2009.

*Shawn D. Bible*, for appellant.
*John S. Husser*, for appellees.