**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

June 27, 2017

# In the Court of Appeals of Georgia

A17A0578. STYLES v. SPYKE TEN, LLC.

BRANCH, Judge.

Freddie Styles appeals following the denial of his motion to set aside a default judgment entered against him in a suit where he was served by publication. Because we find that the trial court erred by allowing service by publication, we reverse.

In his motion, Styles attacked the trial court's jurisdiction over him based on improper service, and a trial court's judgment may be set aside for "[l]ack of jurisdiction over the person." OCGA § 9-11-60 (d) (1). "We review a trial court's ruling on a motion to set aside a judgment under OCGA 9-11-60 (d) for abuse of discretion." *Moore v. Davidson*, 292 Ga. App. 57, 58 (663 SE2d 766) (2008) (citation omitted). "Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is any evidence to support them."

*Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 140 (1) (b) (661 SE2d 185) (2008) (citation, punctuation and emphasis omitted).

The record shows that on October 6, 2015, based on unpaid taxes, the DeKalb County Tax Commissioner sold property owned by Styles, located at 149 Candler Road, Atlanta, Georgia 30317 (the "DeKalb property"), to Callaway Holdings, LLC, for $150,000. The sale generated $145,423.69 of funds in excess of the amount due to the tax commissioner (which funds were later deposited into the registry of the court). Shortly before the DeKalb tax sale, Spyke Ten, LLC, had acquired a tax lien against Styles from Fulton County based on unpaid taxes of $2,574.33 on a separate property located in Fulton County.[1] After the DeKalb tax sale, Spyke Ten purported to exercise a redemption of the DeKalb property under OCGA § 48-4-40 et seq.[2] by paying $180,000 to Callaway Holdings.

---

[1] Although Spyke Ten's petition states that the Fulton tax lien pertained to 149 Candler Road, the fi. fa. attached to the petition shows a lien pertaining to "2455 Mc Alpin Ter" in Fulton County.

[2] "OCGA § 48-4-40 authorizes redemption by 'the defendant in fi. fa. or any person having any right, title, or interest in or lien upon such property.' OCGA § 48-4-41 authorizes redemption by 'a creditor of the defendant in fi. fa. who has no lien. . . .'" *DRST Holdings v. Brown*, 290 Ga. 317, 318 (2) (720 SE2d 626) (2012) (punctuation omitted).

2

In an unverified complaint, Spyke Ten then filed suit to enforce a claim of lien against the DeKalb property arising from its redemption of that property pursuant to OCGA § 48-4-43; it also sought to foreclose on the DeKalb property, to quiet title to that property pursuant to OCGA § 23-3-40, and to recover the excess funds generated by the DeKalb tax sale. In the petition, Spyke Ten asserted that Styles could be served at an address different from the subject property, namely 98 Candler Road S.E., Atlanta, Georgia. Spyke Ten also asserted that it would "serve any tenant, owner, or occupant of [149 Candler Road] by tacking and mailing." In two affidavits of service filed with the court, the process server averred that he did just that: he served the petition and summons "by posting same on the subject property [, i.e., 149 Candler Road S.E.] on December 29, 2015, 2:08 p.m.," and he attempted to serve the petition and summons on Styles on 2:14 p.m. the same day at 98 Candler Road S.E. but averred that Styles was "'Non-Est' at this vacant, uninhabitable house address."

Less than 30 days later, Spyke Ten moved to allow service on Styles by publication under OCGA § 9-11-4 (f) (1) (B).[3] In support of its motion, Spike Ten attached an affidavit of its attorney who averred the following: that he searched for Styles's address; that Spyke Ten based its attempts at service on the efforts of an unnamed "skip tracer" who found the last known address using "the database maintained by Lexis-Nexis, and has been unable to locate a more current address"; that Spyke Ten attempted personal service on Styles at that last known address; and that the process server's affidavit was returned marked "non est." No affidavit from the skip tracer was presented. The trial court allowed service by publication on the ground that Styles could not be found within the state.

---

[3] OCGA § 9-11-4 (f) (1) (B) provides that,
In any action which relates to, or the subject of which is, real or personal property in this state in which any defendant, corporate or otherwise, has or claims a lien or interest, actual or contingent, or in which the relief demanded consists wholly or in part of excluding such defendant from any interest therein, where the defendant resides outside the state or has departed from the state, or cannot, after due diligence, be found within the state, or conceals himself or herself to avoid the service of summons, the judge or clerk may make an order that the service be made by publication of summons. The service by publication shall be made in the same manner as provided in all cases of service by publication.

4

When Styles failed to answer after publication, Spyke Ten filed a motion for a default judgment and final order, which the trial court granted. Without an accompanying affidavit, Spyke Ten attached to its motion a copy of an envelope that is not dated, stamped, or postmarked, which is addressed to "Tenant/Owner/Occupant" at 149 Candler Road. The final order included, among other things, "a judgment against all Respondents for equitable subrogation in the amount of $180,000.00 plus applicable statutory interest."

Styles responded with a verified motion to set aside the judgment. In the motion, Styles averred that he was the owner of 149 Candler Road; that he resided at the property at the time of the attempted service; that he had resided there continuously for years; that the home has utility service, a flower bed that Styles tends all year, and a garbage bin; that he was never properly served; and that he had not attempted to evade service. Attached to a subsequent brief, Styles submitted DeKalb County Real Estate Tax Statements for the years 2012, 2013, 2014, and 2015, each of which shows that it is addressed to Styles at 149 Candler Road.

Spyke Ten responded, and among other things, argued that Styles "likely had actual knowledge of this action but simply chose to ignore it" given that a notice was tacked onto the door of the address where Styles claimed to reside. At a hearing on

5

Styles's motion, Spyke Ten's counsel stated that the Lexis database that was used to find Styles's last known address is named "Accurint."[4] Spike Ten's process server testified that he was specifically hired to attempt service on Styles at 98 Candler Road; that when he went to 149 Candler Road, it was his "purpose . . . to post the property"; that 149 Candler Road appeared to be uninhabited; that he did not encounter Styles at 149 Candler Road; and that he did not see cars, a garden, or a garbage bin on the property. On cross-examination, however, he admitted that he did not have any information showing that Styles did not live at 149 Candler Road; that he did not look on the internet for any information about where Styles might live; that he was not hired to research where Styles might live, stating "There are times I am retained to do locate and investigations. In this case I was not"; that he was only hired

---

[4]The Lexis Accurint database is a search engine to locate people and businesses. It reviews "65 billion public and proprietary records from more than 10,000 diverse sources." However, it cautions the user that

> This product or service aggregates and reports data, as provided by the public records and commercially available data sources, and is not the source of the data, nor is it a comprehensive compilation of the data. Before relying on any data, it should be independently verified.

https://www.lexisnexis.com/en-us/products/accurint-for-legal-professionals.page (accessed May 30, 2017).

6

to make the service that he attempted; that if he had been hired to perform an investigation it might have included searching "a number of proprietary investigative data bases among other things," and "old-fashioned gum shoe checking out places"; that he also could have used on-line resources to look for Styles's tax returns on the property; that he could easily have looked at other on-line resources such as 411.com and whitepages.com, although he preferred to use more sophisticated resources; and that the he took no additional steps to locate Styles, stating that "once I visited 149, didn't see him there, I didn't make any further efforts." Spyke Ten's skip tracer again did not testify.

The trial court denied Styles's motion to set aside on three grounds. It first found that Spyke Ten showed that it had satisfied "state and federal concepts of due process" because it "underwent steps reasonably calculated to give the defendant actual notice of this action" by attempting to serve Styles at 98 Candler Road where the Lexis search showed that he resided at the time, by posting at 149 Candler Road, and by mailing a copy of the summons and petition to 149 Candler Road, such that it was reasonable to infer that Styles had actual knowledge of the action but chose to ignore it. Second, the court found that service by publication satisfied OCGA § 9-11-4 (f) (1) (B) by posting at 149 Candler Road and attempting personal service at 98

Candler Road because it reasonably relied on the Lexis search result in attempting to locate Styles. Finally the court found that the notice by publication was proper and a defect in the publisher's affidavit was immaterial.[5] We granted Styles's application for discretionary review.

The service by publication underlying Spyke Ten's in personam default judgment against Styles is insufficient to support that judgment unless it satisfies the requirements of OCGA § 9-11-4 (f) (1) (B) and due process. *Hutcheson v. Elizabeth Brennan Antiques & Interiors*, 317 Ga. App. 123, 127 (1) (730 SE2d 514) (2012) ("service must be made as provided by the Code section") (footnote omitted); *Abba Gana v. Abba Gana*, 251 Ga. 340, 343 (1) (304 SE2d 909) (1983) ("regardless of whether a proceeding is in rem or in personam, due process requires that a chosen method of service be reasonably certain to give actual notice of the pendency of a proceeding to those parties whose liberty or property interests may be adversely affected by the proceeding").

Both OCGA § 9-11-4 (f) (1) (B) and due process require a showing that the plaintiff has acted with due diligence when attempting to locate the defendant. OCGA

---

[5] Although this third point is raised on appeal, it is moot given our holding below.

8

§ 9-11-4 (f) (1) (B) (judge may order service by publication where it appears that, among other things, "the person on whom service is to be made . . . cannot, after due diligence, be found within the state, or conceals himself or herself to avoid the service of the summons."); *Abba Gana*, 251 Ga. at 343 (1) ("Because notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts." (citations omitted)); *Ragan v. Mallow*, 319 Ga. App. 443, 446-447 (2) (744 SE2d 337) (2012). In making this decision, "it is the duty of the courts to determine whether the movant has exercised due diligence in pursuing every reasonably available channel of information." *Abba Gana*, 251 Ga. at 343 (1). "[A]lthough it is the trial court which first passes upon the legality of notice, the appellate courts must independently decide whether under the facts of each case the search for the absentee interested party was legally adequate." Id.; *H & C Dev. v. Bershader*, 248 Ga. App. 546, 549-550 (1) (546 SE2d 907) (2001).

Here, Spyke Ten's offer of proof as to its own due diligence fails to meet the required standard. First, Spyke Ten's attorney's affidavit that the skip tracer found the

9

last known address using a Lexis database shows that only one source was used to attempt to obtain the correct address, and the website used has a disclaimer stating that the information should be independently verified. Second, the simple assertion that Spyke Ten used a skip tracer is insufficient to show due diligence without providing specific details or dates to show diligence. See *McGhee v. Jones*, 287 Ga. App. 345, 346 (1) (652 SE2d 163) (2007). Third, Spyke Ten gave the process server the limited instruction to serve Styles at what turned out to be the wrong location and to tack service on 149 Candler Road; Spyke Ten did not instruct the process server to investigate and locate Styles for purposes of service. Fourth, the process server testified that he had several additional channels for obtaining information about Styles but that he was not hired to use them and therefore did not do so. Fifth, the envelope submitted as purported evidence for the assertion that Spyke Ten mailed the summons and petition to 149 Candler Road does not have a postmark, postage, or a date, and it is therefore of little value in determining whether Spyke Ten mailed anything or what steps Spyke Ten actually performed and when. Sixth, the process server made only one outing to perform his two efforts at service, which occurred six minutes apart, following which he made no further attempts to locate or serve Styles. Seventh, the process server offered no evidence to show that Styles was actually at

10

149 Candler Road at the time of the attempted service but avoided coming to the door.

In sum, Spyke Ten has not shown that Styles could not be found in the state or that he concealed himself to avoid service. See OCGA § 9-11-4 (f) (1) (B); cf. *Hutcheson*, 317 Ga. App. at 127 (1) ("'substantial compliance' in matters involving service of process is insufficient") (footnote omitted). And Spyke Ten plainly failed to pursue every reasonable "channel of information" in attempting service. *Abba Gana*, 251 Ga. at 344; see also *Hamilton v. Renewed Hope*, 277 Ga. 465, 469 (589 SE2d 81) (2003) (error upholding service by publication where plaintiff did not show that it made any effort to obtain defendant's address "from any source other than the tax and deed records, that other channels of information were not reasonably available, or that use of them would have been impractical or fruitless") (citation and punctuation omitted). Accordingly, the trial court abused its discretion by permitting service by publication, and the denial of Styles's motion to set aside the default judgment must be reversed. It follows that we need not reach Styles's enumeration of error concerning the legal validity of the trial court's final judgment.[6]

*Judgment reversed. McFadden, P. J., and Bethel, J., concur.*

---

[6] For this reason Styles's pending motion for leave to file a supplement brief is denied.

11