**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**



SUPREME COURT OF GEORGIA
Case No. S24A1161, S24I0777

November 19, 2024

The Honorable Supreme Court met pursuant to adjournment.

The following order was passed:

MANUEL GARCIA v. THE STATE.

This Court granted Garcia's application for interlocutory appeal in Case No. S24I0777, and this appeal followed. Upon review of the full record and the briefs of the parties, this Court has determined that the application for interlocutory appeal in this case was improvidently granted. Accordingly, the order granting the application is vacated, the application is denied, and the appeal is dismissed.

*All the Justices concur.*

**SUPREME COURT OF THE STATE OF GEORGIA**
Clerk's Office, Atlanta

I certify that the above is a true extract from the minutes of the Supreme Court of Georgia.
Witness my signature and the seal of said court hereto affixed the day and year last above written.

_____, Clerk

In the Supreme Court of Georgia

Decided: November 19, 2024

S24A1161. GARCIA v. THE STATE.

WARREN, Justice, concurring.

In August 2023, law enforcement officers seized from Manuel Garcia $236,350 in cash and a handgun they characterized as contraband related to drug and firearm offenses. The State filed an in rem complaint for civil forfeiture against the property, naming Garcia as an owner or interest holder and listing his address in Florida. The State later obtained an order for service by publication under OCGA § 9-16-12 (b) (3), which says, in pertinent part, that if an "owner or interest holder is unknown or resides out of this state . . . , a copy of the notice of the complaint for forfeiture shall be published once a week for two consecutive weeks in the legal organ of the county in which the complaint for forfeiture is pending." Garcia filed in the trial court a constitutional challenge to OCGA §

2

9-16-12 (b) (3), contending that it violates due process by permitting service of process by publication in the first instance, even when a person's address is known, and the trial court summarily denied that claim.[1] We granted Garcia's application for interlocutory appeal primarily to decide whether OCGA § 9-16-12 (b) (3) violates due-process principles to the extent it allows service only by publication when an owner or interest holder's out-of-state address is known.[2] As explained more below, we cannot reach that

---

[1] Garcia did not specify whether his claim is that the statute is facially unconstitutional or unconstitutional as applied to him or whether the claim arises under the United States or Georgia Constitution, or both. In his interlocutory application, he clarified that he challenges the statute facially and as applied, but he cited no specific provisions of the United States or Georgia Constitution; nor did he allege whether his claim arises under the federal or state Constitution, or both.

[2] In addition, we asked whether Garcia was also served by certified mail because we recognized that this factual issue might prevent us from reaching the merits of the constitutional question, and as discussed more below, it in fact does. And we asked whether the trial court erred by denying Garcia's motion for the immediate return of his property under OCGA § 9-16-7 (c), which says that if the state attorney fails to file a complaint for forfeiture within 60 days from the date of seizure, "the property shall be released on the request of an owner or interest holder, pending a complaint for forfeiture pursuant to Code Section 9-16-12 or 9-16-13, unless the property is being held as evidence. . . ." But the text of OCGA § 9-16-7 (c) and the record in this case support the trial court's determination that Garcia was not entitled to the return of his property, so that ground, by itself, does not warrant interlocutory

3

significant question in this case, although it appears that the answer may well be "yes."

Indeed, we suggested as much four years ago in a case in which the same question was raised. In *Crowder v. State*, 309 Ga. 66 (844 SE2d 806) (2020), we addressed whether OCGA § 9-16-12 (b) (3) permits service of process by publication in the first instance on owners or interest holders who reside out of state. There, after construing the text, context, and structure of the statute, we concluded that it does. See id. at 69-73. We noted, however, that OCGA § 9-16-12 (b) (3) "may well implicate constitutional concerns regarding due process," which "requires every method of service to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 73 (citations and punctuation omitted). We explained that

---

review. See Supreme Court Rule 31 (explaining that an application for interlocutory appeal will be granted only when the issue to be decided appears to be dispositive of the case, the order appears erroneous and will probably cause a substantial error at trial, or the establishment of precedent is desirable).

> [b]ecause notice by publication is a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that reasonable diligence has been exercised in attempting to ascertain their whereabouts.

Id. at 74 (citations and punctuation omitted). But we did not decide in that case whether notice by publication under OCGA § 9-16-12 (b) (3) violates due-process principles; the trial court had not ruled on that issue, so we remanded the case with the direction that the trial court consider the claim in the first instance. See id.

In this case, by contrast, Garcia raised, and the trial court ruled on, the same sort of due-process challenge to OCGA § 9-16-12 (b) (3) that was implicated in *Crowder*. And it appears that such a challenge would have merit, because as we noted in *Crowder*, service only by publication on an interested party whose name and address is known generally does not comport with due-process requirements. See, e.g., *Mullane v. Central Hanover Bank & Trust Company*, 339 U.S. 306, 317-318 (70 SCt 652, 94 LE 865) (1950) (explaining that the United States Supreme Court "has not hesitated to approve of resort to [notice by] publication . . . where it is not reasonably

possible or practicable to give more adequate warning," such as when a person's "whereabouts could not with due diligence be ascertained," but that notice by publication to people whose names and addresses are known does not satisfy due process); *Schroeder v. City of New York*, 371 U.S. 208, 212-213 (83 SCt 279, 9 LE2d 255) (1962) ("The general rule that emerges from the *Mullane* case is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."); *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 797-800 (103 SCt 2706, 77 LE2d 180) (1983) (reiterating the principle in *Mullane*, collecting cases following it, and holding that a state statute that allowed notice by publication and posting did not provide a mortgagee of property, who was readily identifiable, adequate notice of a sale of the property for nonpayment of taxes); *Hamilton v. Renewed Hope, Inc.*, 277 Ga. 465, 466 (589 SE2d 81) (2003) ("If the name and address of an interested party can be reasonably ascertained, notice of a tax sale by publication does not

6

meet the requirements of due process."); *Funderburke v. Kellet*, 257 Ga. 822, 822-824 (364 SE2d 845) (1988) (holding that a statute authorizing the publication of notice of foreclosure of the right to redeem property did "not satisfy the requirements of due process under *Mennonite*"); *Abba Gana v. Abba Gana*, 251 Ga. 340, 341-344 (304 SE2d 909) (1983) (concluding that the trial court in a divorce proceeding erred by authorizing service of process by publication, which did not meet the constitutional requirement of due process because the wife testified that she knew locations where the husband might be found but could not pinpoint his current residence, such that she "was not reasonably diligent" in seeking his whereabouts).

Unfortunately, though, we cannot reach the issue of whether OCGA § 9-16-12 (b) (3) violates due process in this case. The record shows that the trial court's order authorizing service of process by publication pursuant to OCGA § 9-16-12 (b) (3) also directed service by certified mail sent to Garcia's Florida address, and the State properly followed that direction. Service by certified mail generally

7

satisfies due process.  See, e.g., *Dusenbery v. United States*, 534 U.S. 161, 168-169 (122 SCt 694, 151 LE2d 597) (2002) (explaining that a statute that required the FBI to publish notice of an impending forfeiture proceeding and to provide notice by certified mail, which the FBI sent to the purported owner at the correctional facility where he was incarcerated, did not violate due-process requirements, and noting that service by certified mail is "a method our cases have recognized as adequate for known addressees when we have found notice by publication insufficient"); *Mennonite Board of Missions*, 462 U.S. at 800 (noting that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party") (emphasis omitted); *Mullane*, 339 U.S. at 317 (explaining that notice by publication was inadequate to inform people who could be notified by more effective means, such as mailed notice).[3]

---

[3] In his brief, Garcia raises several challenges related to the statutory sufficiency of the service by certified mail in this case—but he did not raise

8

And that is so here. Under all the circumstances, I am comfortable concluding that service to Garcia's address by certified mail provided notice reasonably calculated to apprise him of the forfeiture proceeding, such that his right to due process was not violated.[4] We therefore cannot reach the question of whether service

those arguments in the trial court, and the court did not rule on them. And in any event, whether service in this case was sufficient as a matter of statutory law is an issue that is distinct from the question of whether service satisfied constitutional due process. See *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 893-894 (792 SE2d 680) (2016) (explaining that statutory notice requirements are distinct from constitutional notice requirements). See also, e.g., *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (130 SCt 1367, 176 LE2d 158) (2010) (holding that although a debtor's failure to serve process pursuant to the federal Bankruptcy Code violated a procedural rule, it "did not amount to a violation of [the creditor's] constitutional right to due process").

[4] I also note that the record shows that Garcia made several filings in the forfeiture case before he was served by certified mail, indicating that he had actual notice of the proceeding. In this respect, although we mentioned in *Crowder* (in dicta in a footnote) that a "'defect in service [i]s not cured by the fact that defendants had actual knowledge that the [proceeding] had been filed against them,'" 309 Ga. at 74 n.10 (citation omitted), it is worth nothing that it appears that "the constitutional requirement of adequate notice can under proper circumstances be fulfilled by actual notice." *Abba Gana*, 251 Ga. at 345. See also, e.g., *United Student Aid Funds, Inc.*, 559 U.S. at 272 (holding that even though a debtor failed to serve process on a creditor, the creditor "received *actual* notice" of the bankruptcy proceeding, which "more than satisfied [the creditor's] due process rights") (emphasis in original); *United States v. One Star Class Sloop Sailboat*, 458 F3d 16, 22 (1st Cir. 2006) ("A putative claimant's actual knowledge of a forfeiture proceeding can defeat a subsequent due process challenge, even if the government botches its obligation to furnish him

9

only by publication under OCGA § 9-16-12 (b) (3) violates due-process principles. See, e.g., *State v. Randall*, 318 Ga. 79, 82-83 (897 SE2d 444) (2024) (explaining that when there is a basis on which to resolve a claim without reaching a novel constitutional argument, courts generally should do so).

I therefore agree that the proper course of action in this case is to dismiss the appeal as improvidently granted. See, e.g., *Monroe v. State*, 313 Ga. 458, 458-459 (870 SE2d 404) (2022) (Peterson, J., concurring) (agreeing with the dismissal of an appeal on the ground that the underlying interlocutory application was improvidently granted, despite the fact that the appeal presented an important question, due to a defect in the case that prevented the Court from reaching the merits of that question). But because the authority from the United States Supreme Court cited above calls into serious question the constitutionality of OCGA § 9-16-12 (b) (3), we should consider addressing that issue in a case where it is properly

with notice."). But because the certified mailing to Garcia's address clearly met the requirements of due process, there is no need to determine whether due process was also satisfied by actual notice in this case.

10

presented. And because such a case may not arise soon enough, I encourage the General Assembly to consider amending OCGA § 9-16-12 (b) (3) to ensure that it comports with due-process principles.