**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**January 14, 2015**

# In the Court of Appeals of Georgia

A14A2238, A14A2333. HOOKS v. McCONDICHIE PROPERTIES     JE-114, 119
    1, LP et al., and vice versa.

ELLINGTON, Presiding Judge.

Michael Hooks filed this personal injury action against McCondichie

Properties 1, LP, and McCondichie Properties 2, LP, collectively ("McCondichie")

in the Superior Court of Clayton County. He served the Secretary of State of Georgia,

and obtained a default judgment. McCondichie filed a motion to set aside the default

judgment. The trial court determined that Hooks was authorized to serve

McCondichie by substituted service upon the Secretary of State but that Hooks failed

to perfect such service in the statutorily prescribed manner. On that basis, the trial

court granted McCondichie's motion to set aside the default judgment. Pursuant to

a granted application for an interlocutory appeal, both parties appeal.

In Case No. A14A2238, Hooks contends that the trial court erred in ruling that he failed to comply with the statutory requirements for substituted service upon a limited partnership. In Case No. A14A2333, McCondichie contends that the trial court erred in finding in the first instance that substituted service upon the Secretary of State was authorized. Based on this argument, McCondichie contends that, even if the trial court erred in ruling that Hooks failed to comply with the requirements for substituted service, such error was moot and the order granting its motion to set aside the default judgment nevertheless must be affirmed. For the reasons explained below, we hold that the trial court erred in setting aside the default judgment and reverse.

> Under Georgia law, when the defense of lack of personal jurisdiction due to defective service is raised by way of a motion to set aside the judgment, the trial court sits as the trier of fact. Our standard of review in this regard is the any evidence rule, and absent an abuse of discretion, we will not reverse a trial court's refusal to set aside a judgment.

(Footnote omitted.) *Stokes & Clinton, P.C. v. Noble Sys. Corp.*, 318 Ga. App. 497, 498 (734 SE2d 253) (2012). However, where the facts are undisputed and the question is one of law, we review the ruling de novo. *Guthrie v. Wickes*, 295 Ga. App. 892, 892 (673 SE2d 523) (2009).

So viewed, the facts relevant to both appeals are as follows: In his complaint, Hooks alleged that he was injured while on duty as a police officer, responding to a burglary call at property owned by McCondichie. On August 5, 2013, Hooks sent McCondichie a demand letter through its registered agent, James Tenney, at the address McCondichie had provided to the Secretary of State for its registered office. McCondichie acknowledged having received the demand letter. Further, McCondichie's insurer notified Hooks' counsel that it was investigating the claim. Hooks filed suit against McCondichie on December 12.

On December 30, 2013 and on January 6, 2014, Hook's process server attempted to serve the complaint on McCondichie through Tenney at the registered office address. Neither Tenney's name nor the name of his law firm was displayed at that address either on the outside of the building or inside the lobby. The address was for an executive office suite, and the receptionist at the front desk was answering calls for several different companies. When the process server asked the receptionist to notify Tenney that a complaint needed to be served, she took no action to call anyone; instead, she "immediately stated that [Tenney] was 'out of the office.'" To the process server, the office appeared to be a "virtual office" rather than Tenney's actual place

of business.[1] Hooks later learned that Tenney's principal place of business was located at another address.[2] The receptionist informed the process server that there was no one authorized to accept service of process for Tenney or McCondichie at the executive office suite. Hooks provided the court with a copy of the virtual office's standard contract, highlighting a paragraph warning clients not to use the location as their registered office for service of process. The process server averred that, based on his experience, further attempts to serve Tenney at that address would have been futile.

On January 9, 2014, Hooks made substituted service upon McCondichie through the Secretary of State and forwarded a copy of the complaint to Tenney at the registered office address through a commercial courier service. On the same day, the

---

[1] The executive office suite advertised was advertised as providing "virtual office packages" for mail handling and telephone answering services.

[2] Hooks searched the Secretary of State's records and discovered that the address of record for Tenney's law firm is a private residence in Marietta and that the address listed for his principal place of business is a post office box. Although Tenney gave an affidavit averring that the registered office for McCondichie is an "active workplace" and that he "conduct[s] business" there, he did not aver that the registered office is his sole or principle place of business nor did he dispute that he has other "active workplace[s]." Further, notably absent from Tenney's affidavit (and that of the receptionist for the virtual office) is any statement concerning the amount of time that Tenney was actually physically present in the registered office.

4

courier service attempted delivery, but was informed by the receptionist that neither Tenney nor any employee or agent of his was present to accept the package. The courier returned the unclaimed package to Hooks' attorney. The courier's affidavit and receipt of delivery indicates that, when he attempted delivery, he was informed by the receptionist that Tenney was not available to accept delivery. The receptionist for the office suite stated in her affidavit that she was not employed by Tenney. Although she has no recollection of the delivery, she stated that she would have signed for and accepted Tenney's *mail* as part of her duties as office receptionist, but that she would have declined to accept *service of process* because she was not authorized to do so.

McCondichie failed to answer the complaint, and the trial court granted Hooks a default judgment on March 10, 2014. On March 21, 2014, McCondichie moved to set aside and vacate the default judgment pursuant to OCGA § 9-11-60 (d) (1), arguing that Hooks failed to properly perfect service and that, therefore, the trial court lacked personal jurisdiction to enter the default judgment. The superior court found that Hooks exercised reasonable diligence in attempting to serve McCondichie and that substituted service on the Secretary of State was authorized. However, the trial court granted the motion to open default judgment on the narrow issue that Hooks

5

failed to comply fully with OCGA § 14-9-104 (g) because forwarded process via "statutory overnight delivery," as defined in OCGA § 9-10-12 (b) (3), requires a signed receipt from the addressee or an agent of the addressee.

1. McCondichie argues that whether Hooks failed to comply with the statutory requirements for substituted service on the Secretary of State is a moot point because the court committed a more fundamental error by finding, in the first instance, that substituted service on the Secretary of State was authorized. McCondichie argues that the trial court erred in finding that Hooks exercised reasonable diligence in serving McCondichie, contending that the record evidence does not support a finding that McCondichie failed to maintain a registered office within the meaning of the law.[3] Consequently, McCondichie argues, the trial court's order setting aside the default judgment should be affirmed, but on this alternate ground. We disagree.

Under Georgia law, a limited partnership "shall continuously maintain" a "registered office" and a "registered agent for service of process on the limited partnership." OCGA § 14-9-104 (a). Further, "[t]he address of the business office of

---

[3] We note that McCondichie bore the burden of proving that service of process was improper. *Norman Svc. Indus. v. Lusty*, 168 Ga. App. 164, 165 (1) (308 SE2d 411) (1983). Further, evidence of impropriety was required to be "not only clear and convincing, but the strongest of which the nature of the case will admit." (Citation omitted). Id.

6

the registered agent *shall be the same* as the address of the registered office[.]" (Emphasis supplied.) OCGA § 14-9-104 (a) (2).

In this case, the record shows that McCondichie maintains both a registered agent for service of process and a registered office. The record also shows that the addresses listed with the Secretary of State for the agent and the office are the same, at least on paper. However, the record also supports a finding that the registered agent actually maintained his principal place of business elsewhere and that, while he was absent from the registered office, there was no one present in the registered office authorized to accept service of process.

OCGA § 14-9-104 (a)'s requirement that a limited partnership "continuously maintain" a registered office does not mean that a registered agent must be present in the office every moment of the day or that the agent must keep the office open outside of normal business hours.[4] However, if the facts support a finding that the registered agent works principally from an office other than the registered office, or

---

[4] In considering the meaning of a statute, our duty as an appellate court is to "presume that the General Assembly meant what it said and said what it meant." (Citation and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013). "And toward that end, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, and read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." (Footnotes omitted.) *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

that the registered office is little more than a virtual or remote office that is generally unattended by the registered agent, then the registered office is not being "continuously maintained" within the meaning of the law. Under the facts and circumstances of this case, the superior court was authorized to conclude that Hooks' efforts to serve McCondichie at an office that was not functioning as a registered office were reasonable and that further efforts were not required before substituting service upon the Secretary of State. See *McClendon v. 1152 Spring St. Assocs. &c.*, 225 Ga. App. 333, 336-337 (484 SE2d 40) (1997) (The plaintiff's four attempts to serve a registered agent who could not be found at the registered office constituted reasonable diligence and authorized substituted service on the Secretary of State.)

2. Hooks contends that the record shows that he complied with OCGA § 14-9-104 (g) in perfecting substituted service upon the Secretary of State and that the trial court erred in concluding otherwise. We agree.

Georgia law provides:

Whenever a limited partnership shall fail to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such limited partnership upon whom any process, notice, or demand may be served. Service on the Secretary of State of any such process, notice, or demand shall be made

8

by delivering to and leaving with him or her or with any other person or persons designated by the Secretary of State to receive such service a copy of such process, notice, or demand. The plaintiff or his or her attorney shall certify in writing to the Secretary of State that he or she has forwarded by registered mail or statutory overnight delivery such process, service, or demand to the last registered office or agent listed on the records of the Secretary of State, that service cannot be effected at such office, and that it therefore appears that the limited partnership has failed either to maintain a registered office or appoint a registered agent in this state. Any such service by certification to the Secretary of State shall be answerable in not more than 30 days. The provisions of this subsection may be used notwithstanding any inconsistent provisions of Chapter 11 of Title 9.

The trial court held that Hooks complied in all respects with this Code section except one. The court concluded that, when forwarding process by "statutory overnight delivery" to the last registered office, Hooks was required to obtain a receipt for that delivery "signed by the addressee or an agent of the addressee." In reaching this conclusion, the court relied on OCGA § 9-10-12 (b), which provides:

Whenever any law, statute, Code section, ordinance, rule, or regulation of this state or any officer, department, agency, municipality, or governmental subdivision thereof provides that a notice may be given by "statutory overnight delivery," it shall be sufficient compliance if:

9

(1) Such notice is delivered through the United States Postal Service or through a commercial firm which is regularly engaged in the business of document delivery or document and package delivery; . . . and

(3) The sender receives from the United States Postal Service or the commercial firm a receipt acknowledging receipt of the document which receipt is signed by the addressee or an agent of the addressee.

However, in order to perfect substituted service upon the Secretary of State, OCGA § 14-9-104 (g) requires only that the plaintiff certify that suit papers have been "forwarded" by registered mail or statutory overnight delivery. It does not require a party to "notify" or to serve "notice" upon a defendant of the contents of the delivery. Rather, the statute contemplates that the Secretary of State is specifically substituted for the purpose of receiving such "notice." Further, OCGA § 14-9-104 (g) does not require that an addressee actually sign for delivery of the forwarded papers or that the plaintiff obtain a receipt from the "addressee" proving that such delivery was made. Thus, OCGA § 9-10-12 (b) is not only inapplicable, it is inconsistent with the requirements of OCGA § 14-9-104 (g). Indeed, it defies logic that, in order to perfect substituted service upon the Secretary of State as agent of a limited partnership whose registered agent or registered office cannot be found with reasonable diligence, a plaintiff must locate the registered agent – the only "addressee

or authorized agent of the addressee" in this case – and obtain his or her signature on a receipt acknowledging the delivery of forwarded suit papers. Because OCGA § 14-9-104 (g) did not impose upon Hooks an obligation to obtain such a receipt, the superior court erred in granting McCondichie's motion to set aside the default judgment. Consequently, we must reverse the court's order setting aside the default judgment.

*Judgment reversed. Phipps, C. J., and McMillian, J., concur*.