**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

April 13, 2017

# In the Court of Appeals of Georgia

A17A0553. TIMIS VASILE et al. v. ENOCH ADDO.

SELF, Judge.

In this discretionary appeal, Timis Vasile, individually and d/b/a Timis Auto Sales ("Vasile"), and Roga Import Export, LLC ("Roga") appeal the trial court's denial of their second motion to set aside a default judgment. For reasons that follow, we agree with appellants as to Vasile, but disagree as to Roga.

So viewed, the record shows that on September 3, 2015, Enoch Addo sued appellants for breach of contract, money had and received, quantum merit, and unjust enrichment arising from an agreement whereby appellants allegedly consented to receive on behalf of Addo, the amount of $72,000, via a wire transfer. Addo sought judgment in the amount of $64,000, plus interest and attorney fees. Addo alleged that

the money was wired into Roga's bank account and then transferred by Vasile to an account in the name of Timis Auto Sales, but never turned over to Addo.

On September 10, 2015, Addo attempted to serve Vasile individually and as the registered agent for Roga, but the deputy sheriff's return of service was returned non est with a notation that "Timis Vasile owns residence, but rents the home out, defendant is possibly in Romania." On October 27, 2015, Addo moved for service upon Vasile by publication and by mail, averring that he rents the downstairs of Vasile's residence and that Vasile is aware of the lawsuit. According to Addo, Vasile told him before the filing of the lawsuit that he was in a "Mexican jail" and has sent hundreds of threatening text messages to Addo about the lawsuit, including one on September 22, 2015, stating that he hopes Addo dies of cancer and that "God would punish [Addo] for suing [Vasile] while knowing he was in prison," and another on September 29, 2015, asking "when is the court date?" Addo's attorney also filed an affidavit stating that,

> [d]espite the effort at service, affiant has been unsuccessful in serving [Vasile] due to [his] continuing willful and deliberate efforts to avoid service, to wit: Prior to the filing of the lawsuit, Vasile told the Plaintiff he was in a "Mexican jail" but refused to provide the name of that jail. Prior to the filing of this Complaint, Vasile has also communicated with the Plaintiff via the texting "app" "What's App" so it is highly doubtful

2

he would have access to a smart phone or computer while he was in a Mexican prison. Further, after the lawsuit was filed, Vasile somehow learned of the filing of the lawsuit and has sent and has continued to send many threatening text messages to [Addo]. Also, as noted above, Vasile's tenant told the Deputy that Vasile was in Romania so that is more likely the truth than Vasile being in a Mexican prison. . . . It is clear that [Vasile] has personal knowledge of the [complaint] and has personally communicated with [Addo] but [Vasile] will not allow himself to be served.

The trial court granted the motion on November 2, 2015, finding that Vasile "appears to remain a resident of the State of Georgia and has actual knowledge that this action has been filed and is pending, and that the sole reason for [Addo's] failure to accomplish personal service. . . has been the efforts of [Vasile] to secret himself and to conceal himself to avoid service." On December 11, 2015, the notice of publication was filed with the court. In addition, Addo requested that the clerk of the Gwinnett County State Court mail a stamped-filed copy of the notice to Vasile's alleged address. Beginning on December 17, 2015, the notice was published in the Gwinnett Daily Post for four consecutive weeks.

Addo effected substitute service upon Roga by serving the Georgia Secretary of State via certified mail. On December 11, 2015, the Secretary of State issued a

3

certificate of acknowledgment, which indicated that the Secretary of State received the "complaint, summons, [and] attorney certification."

On February 4, 2016, Addo filed a request for default judgment, alleging that "[t]he Defendant Roga. . . was served as follows: (a) by attempting Personal Service on its Registered Agent [(]which was not successful[)]; (b) by Certified Mail to its Registered Agent at its principal office; and (c) by service on the Secretary of State via Certified Mail."[1] On February 17, 2016, the trial court entered a default judgment against appellants for failure to file an answer or other responsive pleadings. The order provided as follows: "Judgment by default is hereby entered against [appellants], jointly and severally, in favor of . . . A[ddo] in the principal sum of $64,000.00 plus interest (18% per annum)."

In March 2016, appellants answered the complaint and moved to set aside the default judgment, contending that Addo committed a fraud upon the court by alleging that he was unaware of Vasile's whereabouts when he moved for service by

---

[1] Attached to Roga's brief in support of its second motion to set aside is a letter filed with the Secretary of State from Addo's attorney stating as follows: "[P]lease find enclosed two (2) copies of such process, notice, or demand. This letter also constitutes our certification in writing to you. . . that we have forwarded by registered or certified mail or statutory overnight delivery such process, notice or demand to the most recent registered office listed on the records of the Secretary of State and that service cannot be effected at such office."

4

publication and effected substitute service on the Secretary of State. In an affidavit filed contemporaneously with the motions, Vasile averred that he was in Romania from June 2, 2015, until October 25, 2015; that Addo resided in a basement apartment of his home and knew Vasile was out of the country; that at the time Addo moved for service by publication, he was aware that Vasile had returned from Romania and was living in the upstairs portion of the home; that he has never been personally served with the lawsuit or "served by mail with anything pertaining to [the] lawsuit" and did not know of its existence until March 17, 2016, when his attorney told him to get a copy from the court; and, that he never received any money on behalf of Addo.

In April 2016, appellants' counsel withdrew from the case. On May 10, 2016, the trial court denied appellants' motion to set aside. On May 21, 2016, appellants' new counsel then filed a second motion, moving to set aside the default judgment for lack of personal jurisdiction based upon improper service, pursuant to OCGA § 9-11-60 (d) (1). Roga argued that the court lacked personal jurisdiction because service was defective pursuant to OCGA § 14-11-209 (f) and Vasile argued that the court lacked personal jurisdiction because service was defective pursuant to OCGA § 9-11-4 (f). On August 8, 2016, the trial court summarily denied the motions and we granted appellants' application for discretionary appeal.

1. As a threshold matter, Addo challenges the trial court's consideration of appellants' second motion to set aside, contending that it was barred by the doctrine of res judicata. Addo claims that appellants should have raised the issue of improper service in their first motion to set aside when they alleged fraud. In *Holloway v. McCarthy*, 151 Ga. App. 828 (261 SE2d 732) (1979), this Court held that the denial of a defendant's first motion to set aside a default judgment did not bar the defendant's second motion to set aside because the motions attacked the judgment on different grounds. Id. at 829 (1). In this case, Vasile's first motion to set aside attacked the judgment on the ground that Addo perpetrated a fraud against the trial court, and the second motion to set aside attacked the judgment on the ground that the trial court lacked personal jurisdiction due to improper service. Accordingly, "the prior ruling of the trial judge against [appellants'] motion to set aside the judgment, from which ruling no appeal was made, was not res judicata." (Citation and punctuation omitted.) Id. Compare *Guthrie v. Wickes*, 295 Ga. App. 892, 894 (2) (673 SE2d 523) (2009) (order denying application for discretionary review invokes the doctrine of res judicata when the judgment appealed from is final and on the merits).

2. In their first enumeration of error, appellants contend that the trial court should have set aside the default judgment against Vasile because service was

improper under OCGA § 9-11-4 (f). Appellants argue that (a) one attempt at service does not meet the requirement of "due diligence," and (b) the clerk of court failed to mail notice to Vasile of the service by publication as required by the statute.[2]

We review a ruling on a motion to set aside for abuse of discretion and affirm if there is any evidence to support it. *Hooks v. McCondichie Properties 1*, 330 Ga. App. 583, 584 (767 SE2d 517) (2015). "Factual disputes regarding service are to be resolved by the trial court, and the court's findings will be upheld if there is *any evidence* to support them." (Citation and punctuation omitted; emphasis in original.) *Vibratech, Inc. v. Frost*, 291 Ga. App. 133, 140 (1) (b) (661 SE2d 185) (2008). However, we review a question of law on appeal under a de novo standard of review, meaning that we "owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation, punctuation and footnote omitted.) *Hutcheson v. Elizabeth Brennan Antiques & Interiors*, 317 Ga. App. 123, 125 (730 SE2d 514) (2012).

---

[2] Appellants do not take issue with the trial court's finding that Vasile concealed himself to avoid service. Nor do they argue on appeal that Addo perpetrated a fraud upon the trial court by alleging that he was unaware of Vasile's whereabouts when he moved for service by publication.

OCGA § 9-11-4 (f) (1) (A) provides that

> [w]hen the person on whom service is to be made resides outside the
> state, or has departed from the state, or cannot, after due diligence, be
> found within the state, or conceals himself or herself to avoid the service
> of the summons, and the fact shall appear, by affidavit, to the
> satisfaction of the judge or clerk of the court, and it shall appear, either
> by affidavit or by a verified complaint on file, that a claim exists against
> the defendant in respect to whom the service is to be made, and that he
> or she is a necessary or proper party to the action, the judge or clerk may
> grant an order that the service be made by the publication of summons.
> . . .

Id. See *Ragan v. Mallow*, 319 Ga. App. 443, 446–47 (2) (744 SE2d 337) (2012).

Because we do not find the service by publication in this case legal, we need not

address appellants' contention that one attempt at service does not meet the

requirement of "due diligence."

Code section 9-11-4 (f) (1) (C) provides that, once publication is made

following a court order, if

> the residence or abiding place of the absent or nonresident party is
> known, the party obtaining the order shall advise the clerk thereof; and
> it shall be the duty of the clerk, within 15 days after filing of the order
> for service by publication, to enclose, direct, stamp, and mail a copy of
> the notice, together with a copy of the order for service by publication

and complaint, if any, to the party named in the order at his or her last
known address, if any, and make an entry of this action on the complaint
or other pleadings filed in the case.

OCGA § 9-11-4 (f) (1) (C). Because service by publication raises due process concerns and is a "notoriously unreliable means of actually informing interested parties about pending suits," *Baxley v. Baldwin*, 279 Ga. App. 480, 482 (2) (631 SE2d 506) (2006), it must be accomplished as provided by the statute and "substantial compliance" is insufficient. *Hutcheson*, supra, 317 Ga. App. at 125-128 (1) (service by publication did not comply with statute where clerk of court conceded failure to mail documents to defendant). See also *Fudge v. Balkissoon*, 199 Ga. App. 755 (406 SE2d 116) (1991) (service by publication did not comply with statute where only one of four publications was made within 60-day period for publication; substantial compliance is not sufficient).

Here, Addo's attorney directed the clerk of court to mail a stamped-filed copy of the notice to Vasile's alleged address as required by OCGA § 9-11-4 (f) (1) (C). Vasile averred that he was never served with the lawsuit and did not know of its existence until six months after it was filed. The statute requires the clerk of court to mail a copy of the order for service by publication, notice of publication, and the

9

complaint to Vasile's last known address *and* to certify such action on the complaint filed in the case. The record contains no evidence of the clerk's certification. Where service by publication is procured, it is the plaintiff's burden to establish "that the defendant received actual notice or expressly or impliedly waived such notice." *McDade v. McDade*, 263 Ga. 456, 457 (2) (435 SE2d 24) (1993). Addo offers no proof that the clerk mailed the documents and instead argues that clerks and deputy clerks of court are public officers who are presumed to discharge their duties properly. In the cases upon which Addo relies in support of this argument, however, the documents at issue were certified by and on file with the respective clerks of court and neither address the requirements for service by publication. See *Taylor v. Young*, 253 Ga. App. 585, 586 (1) (b) (560 SE2d 40) (2002) (addressing validity of order appointing probate court clerk as hearing officer); *Oller v. State*, 187 Ga. App. 818, 820 (2) (371 SE2d 455) (1988) (holding sufficient proof of prior conviction based upon authenticated records "certified as a true and correct copy of the original 'indictment, plea and sentence'"). Additionally, in both cases, it was noted that the authenticated records of the office of the clerk of court are presumed to speak the truth. *Taylor*, supra; *Oller*, supra. In this case, there is a complete absence in the record of any entry by the clerk of court showing that the documents were mailed.

Addo contends that an exhibit, purporting to be a text message from Vasile to Addo with a photo of an envelope allegedly containing a copy of the lawsuit, attached to Addo's response to appellants' first motion to set aside proves that appellants received a copy of the lawsuit via mail. In that same text, Vagile allegedly asked Addo, "Is there anything I can do so I don't have to go to court?" Simply attaching an exhibit to a motion, however, does not prove its genuineness or authenticity. See OCGA § 24-9-901. See also *Hollie v. State*, 298 Ga. App. 1, 3 (1) (679 SE2d 47) (2009) (email-transmission purporting to show victim lying about defendant's molestation of her ruled inadmissible because "[a]s a general rule, a writing will not be admitted into evidence unless the offering party tenders proof of the authenticity or genuineness of the writing. There is no presumption of authenticity, and the burden of proof rests upon the proffering party to establish a prima facie case of genuineness."). Additionally, we point out that the exhibit is blurred and virtually illegible and, therefore, not entitled to evidentiary consideration. See *Black v. Floyd*, 280 Ga. 525, 526 (1) (630 SE2d 382) (2006) (completely illegible documents are not entitled to evidentiary consideration). But, even if the exhibit purports to be what Addo claims, it does not prove that the clerk of court complied with the statute. Moreover, as appellants point out, there is no evidence of the contents of that

11

envelope. Because strict compliance with the statute is required, the trial court erred in denying appellants' motion to set aside the default judgment against Vasile on this ground.

3. In their second enumeration of error, appellants contend that the trial court should have set aside the default judgment against Roga because service was improper under OCGA § 14-11-209 (f). In particular, appellants argue that one attempt at service cannot be deemed reasonable diligence and the certification submitted to the Secretary of State fails to set forth when Addo mailed notice to Roga in accordance with the statute. We disagree.

At the time Addo was attempting service, OCGA § 14-11-209 (f) provided as follows:

> Whenever a limited liability company shall fail to appoint or maintain a registered agent in this state or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the Secretary of State shall be an agent of such limited liability company upon whom any process, notice, or demand may be served. Service on the Secretary of State of any such process, notice, or demand shall be made by delivering to and leaving with him or her or with any other person or persons designated by the Secretary of State to receive such service two copies of such process, notice, or demand. The plaintiff or his or her attorney shall certify in writing to the Secretary of State that

the limited liability company failed either to maintain a registered office or appoint a registered agent in this state and that he or she has forwarded by registered or certified mail or statutory overnight delivery such process, notice, or demand to the most recent registered office listed on the records of the Secretary of State and that service cannot be effected at such office.

OCGA § 14-11-209 (f).[3] There are no cases interpreting the "reasonable diligence" required by OCGA § 14-11-209 (f). Black's Law Dictionary defines "reasonable diligence" as: "1. A fair degree of diligence expected from someone of ordinary prudence under circumstances like those at issue. 2. See due diligence." Black's Law Dictionary (7th ed. 2014), p. 468. It defines "due diligence" as "diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation. Also termed reasonable diligence; common diligence." Id. Accordingly, we find "reasonable diligence" and "due diligence" synonymous for purposes of analyzing whether Addo complied with OCGA § 14-11-209 (f). Cf. *B&B Quick Lube v. G&K Svcs. Co.*, 283 Ga. App. 299, 300 (641 SE2d 198) (2007), overruled on other grounds, *Giles v. State Farm Mut. Ins. Co.*, 330 Ga.

---

[3] The subsection was amended effective July 1, 2016, substituting "two copies" with "a copy." Ga. L. 2016, p. 225, § 4-2.

13

App. 314 (765 SE2d 413) (2014) (stating that plaintiff must "use reasonable or due diligence in serving the registered agent of the corporation before resorting to service by registered mail, certified mail, or overnight delivery.").

In cases where the plaintiff files a complaint before expiration of the statute of limitation but fails to perfect service before the limitation runs, the plaintiff has the burden of showing that *due diligence* was exercised. In those cases, "[t]he trial court has discretion to determine whether a plaintiff has exercised sufficient diligence to effect service after the running of the statute of limitation, and we will not disturb the court's decision absent an abuse of that discretion." *Baxley*, supra, 279 Ga. App. 480 at 482-483 (3).

In this case, the evidence showed that Vasile, Roga's registered agent, was either in a Mexican jail or in Romania with an unknown date of release or return. Accordingly, it was impossible for Addo to perfect service on Roga at the address of the registered agent. See OCGA § 14-11-209 (a) (2). Given Vasile's absence, we find that the trial court did not abuse its discretion in finding that Addo exercised reasonable diligence under the particular facts and circumstances of this case. See *Hooks*, supra, 330 Ga. App. at 587 (1) (finding that under analogous statute, OCGA § 14-9-104 (a), plaintiff's efforts to serve defendant "at an office that was not

functioning as a registered office were reasonable and that further efforts were not required before substituting service upon the Secretary of State").

We also reject appellants' contention that the certification submitted by Addo's counsel to the Secretary of State was defective. Addo's attorney certified that he had "forwarded by registered or certified mail or statutory overnight delivery [two copies of] such process, notice or demand to the most recent registered office listed on the records of the Secretary of State." This language tracks the statute. Additionally, we can infer from counsel's use of the past-tense "forwarded" that he mailed two copies of the summons and complaint to Roga's address *before* mailing them to the Secretary of State. Compare *Anthony Hill Grading v. SBS Investments*, 297 Ga. App. 728, 728 (678 SE2d 174) (2009) (affirming grant of motion to set aside because *simultaneous* mailing of summons and complaint to company and Secretary of State does not comply with the express requirements of OCGA § 14-11-209 (f)); *Governor's Towne Club v. J. W. Thomason, Inc.*, 308 Ga. App. 74, 75 (706 SE2d 602) (2011) (reversing award of default judgment because affidavit stating that summons was "properly sent" to the defendant was defective and did not fulfill the requirements of OCGA § 14-11-209 (f)). Finally, the statute does not require that the certification be filed with

15

the trial court. It follows that the trial court correctly denied appellants' motion to set aside the default judgment as to Roga.

In sum, we affirm the trial court's order denying appellants' motion to set aside the default judgment as to Roga, reverse the trial court's order denying appellants' motion to set aside the default judgment as to Vasile, and vacate that portion of the trial court's order entering default judgment jointly and severally against Vasile and Roga.

*Judgment affirmed in part, reversed in part, and vacated in part. Dillard, P. J. and Ray, J., concur.*