**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 1, 2022**

# In the Court of Appeals of Georgia

A21A1475. SHULER v. AKPAN.

DILLARD, Presiding Judge.

There are things the law allows, but does so begrudgingly. Service by publication is one of those things—"a notoriously unreliable means of actually informing interested parties about pending suits."[1] For this reason, the "constitutional prerequisite" for service by publication is a "showing that reasonable diligence has been exercised in attempting to ascertain [a defendant's] whereabouts."[2] That important prerequisite has not been satisfied in this case.

Geraldine Akpan—in her official capacity as the personal representative of the Estate of Georgianna Parker—filed suit against Dawn Shuler, Herbert Shuler, and

---

[1] *Abba Gana v. Abba Gana*, 251 Ga. 340, 343 (1) (304 SE2d 909) (1983).

[2] *Id*.

Tracy Shuler, alleging, *inter alia*, that these defendants conspired to defraud Parker of assets and property prior to her death. Following the defendants' failure to timely answer Akpan's complaint (after service by publication), the trial court entered a default judgment against them. Tracy Shuler now appeals, arguing the trial court erred in denying her motion to set aside the default judgment on the ground that Akpan's attempt to serve her by publication was invalid. Because Akpan failed to strictly comply with the requirements for service by publication delineated in OCGA § 9-11-4 (f) (1) (A), we reverse.

The record shows that on September 24, 2018, Akpan—in her official capacity as the personal representative of the Estate of Georgianna Parker—filed suit in the Superior Court of Gwinnett County against Dawn Shuler, Herbert Shuler, and Tracy Shuler. In doing so, Akpan alleged, *inter alia*, that the defendants conspired to defraud the elderly and memory-impaired Parker of assets and property during the period of time leading up to her death. Importantly, the record includes two sheriff's entry-of-service forms, both of which were filed on October 8, 2018—one concerning the attempted service of Dawn Shuler on three separate occasions, and the other documenting the two attempts made to serve Herbert Shuler. In stark contrast, the record includes no entry-of-service form concerning Tracy Shuler.

2

On December 3, 2018, Akpan filed a motion to appoint a special process server, specifically requesting service of "the Complaint for Damages on Defendants Dawn Shuler and Herbert Shuler (collectively referred to hereinafter as the 'Defendants')." And in that motion, Akpan noted the sheriff's inability "to perfect service upon the Defendants." Less than one week later, the trial court granted that motion. Other than in the case caption, neither Akpan's motion nor the trial court's order mentions Tracy Shuler.

On February 11, 2019, still unable to perfect service of process, Akpan filed a motion seeking service by publication. After explaining that even the special process server failed to perfect service, Akpan alleged that "*both* of said defendants are necessary or proper parties to this action, and furthermore a claim exists against *both* of them as more fully pled in Plaintiff's Complaint."[3] And in support of her motion, Akpan attached two affidavits, in which the special process server recounted in considerable detail her unsuccessful attempts to perfect service upon Dawn and Herbert Shuler. Again, other than naming her in the case caption, neither Akpan's motion nor the special process server's affidavits indicated that there had been any attempt to effect service upon Tracy Shuler. Nonetheless, on February 12, 2019, and

---

[3] (Emphasis supplied).

without holding an evidentiary hearing, the trial court granted Akpan's motion for service by publication, noting that "Defendants Dawn Shuler, Herbert Shuler[,] and Tracy Shuler, on whom service is to be made in the above styled civil action, after due diligence, cannot be found within the State of Georgia or conceal themselves to avoid service of the summons . . . ."

Despite the publication, none of the defendants filed answers; and as a result, on July 29, 2019, Akpan filed a motion for a default judgment. On September 4, 2019, the trial court held a hearing on the matter, which was either not transcribed or not included in the record. Then, on October 10, 2019, the court issued a default-judgment order, awarding monetary damages against all three defendants as joint tortfeasors. In addition, the order noted that service by publication was warranted because both the sheriff and the special process server had been unable to perfect service upon the "defendants," but without recounting the details of those efforts as to each specific defendant.

Nearly eight months later, Tracy Shuler learned about the lawsuit and default judgment after funds from her paycheck were garnished. Thereafter, Tracy retained counsel and, on August 12, 2020, she filed a motion to set aside the default judgment. In this motion, Tracy argued that service by publication was invalid because Akpan

4

failed to comply with the mandatory statutory requirements for such service, and therefore, the trial court lacked personal jurisdiction over her. Akpan filed a response, and the trial court held a hearing, after which it denied Tracy's motion. Subsequently, Tracy filed an application for discretionary review, which we granted. This appeal follows.

Absent an abuse of discretion, we will not reverse a "trial court's refusal to set aside a default judgment."[4] But the standard of review for a question of law is *de novo*, "during which we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5] With these guiding principles in mind, we will address Tracy's claim of error.

Tracy contends the trial court erred in denying her motion to set aside the default judgment based on a lack of personal jurisdiction. Specifically, she maintains that Akpan's attempt to serve her by publication was invalid because it failed to

---

[4] *Hutcheson v. Elizabeth Brennan Antiques & Interiors, Inc.*, 317 Ga. App. 123, 125 (730 SE2d 514) (2012) (punctuation omitted); *see Anglin v. State Farm Fire & Cas. Ins. Co.*, 348 Ga. App. 362, 363 (823 SE2d 51) (2019) (explaining that this Court reviews a trial court's refusal to set aside a default judgment for an abuse of discretion).

[5] *Hutcheson*, 317 Ga. App. at 125 (punctuation omitted); *see Anglin*, 348 Ga. App. at 363 (noting that in reviewing the denial of a motion to set aside a default judgment, questions of law are reviewed *de novo*).

comply with the mandatory requirements delineated in OCGA § 9-11-4 (f) (1) (A). We agree.

The Supreme Court of the United States has held that "the Due Process Clause requires every method of service to provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"[6] Similarly, the Supreme Court of Georgia has explained that "whether a proceeding is in rem or in personam, due process requires that a chosen method of service be reasonably certain to give actual notice of the pendency of a proceeding to those parties whose liberty or property interests may be adversely affected by the proceeding."[7] And importantly, because notice by publication is "a notoriously unreliable means of actually informing interested parties about pending suits, the constitutional prerequisite for allowing such service when the addresses of those parties are unknown is a showing that

---

[6] *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (III) (108 SCt 2104, 100 LE2d 722) (1988) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (70 SCt 652, 94 LEd 865) (1950)); *accord Crowder v. State*, 309 Ga. 66, 73 (3) (d) (844 SE2d 806) (2020); *Hutcheson*, 317 Ga. App. at 126 (1).

[7] *Crowder*, 309 Ga. at 74 (3) (d) (quoting *Reynolds v. Reynolds*, 296 Ga. 461, 462-63 (769 SE2d 511) (2015)).

reasonable diligence has been exercised in attempting to ascertain their whereabouts."[8]

Nevertheless, Georgia's Civil Practice Act allows for service by publication in limited circumstances.[9] The requirements for obtaining an order for service by publication are detailed in OCGA § 9-11-4 (f) (1) (A), which, in relevant part, provides that

> [w]hen the person on whom service is to be made resides outside the state, or has departed from the state, or cannot, after due diligence, be found within the state, or conceals himself or herself to avoid the service of the summons, and the fact shall appear, by affidavit, to the satisfaction of the judge or clerk of the court, and it shall appear, either by affidavit or by a verified complaint on file, that a claim exists against the defendant in respect to whom the service is to be made, and that he or she is a necessary or proper party to the action, the judge or clerk may grant an order that the service be made by the publication of summons
> . . . .

---

[8] *Crowder*, 309 Ga. at 74 (3) (d) (quoting *Reynolds*, 296 Ga. at 462-63).

[9] *See* OCGA § 9-11-4 (f); *Melton v. Johnson*, 242 Ga. 400, 404 (249 SE2d 82) (1978) ("This court long has been of the opinion that the General Assembly may enact laws providing a procedure for service of process on Georgia residents by publication and by mail if state and federal concepts of due process are not violated.").

And given its concerns regarding due process, the Supreme Court of Georgia has held that service must be made as provided by the Code section, and "substantial compliance" in matters involving service of process is insufficient.[10] In fact, our Supreme Court has further held that there was no authority to dispense with the clear requirements of the Code section "merely because the defendant may otherwise obtain knowledge of the filing of the action."[11] Furthermore, while the trial court makes the initial decision about the legality of notice, the appellate courts "must independently decide whether under the facts of each case the search for the absentee interested party was legally adequate."

In this matter, Tracy contends Akpan's attempt to serve her by publication was invalid because she failed to comply with OCGA § 9-11-4 (f) (1) (A). In fact, Tracy argues Akpan's attempt to serve the defendants prior to publication did not include her at all; and given the record before us, we agree. The two sheriff's entry-of-service forms detail the failed attempts to serve Dawn and Herbert, respectively, but neither

---

[10] *Bible v. Bible*, 259 Ga. 418, 419 (383 SE2d 108) (1989); *see Ballenger v. Floyd*, 282 Ga. App. 574, 575 (639 SE2d 554) (2006) (explaining that our Supreme Court rejected the "substantial compliance rule" in matters involving service of process and that service must be made as provided by the Code section).

[11] *Bible*, 259 Ga. at 419.

8

form mentions Tracy; and the record contains no additional entry-of-service form concerning her. Similarly, Akpan's motion to appoint a special process server requested that the complaint be served "on Defendants Dawn Shuler and Herbert Shuler," but does not mention of Tracy at all. Furthermore, Akpan's motion for service by publication and the special process server's affidavits—attached in support of that motion—recount the failed efforts to serve Dawn and Herbert Shuler, but make no mention of any attempt to effect service upon Tracy. Thus, Akpan failed to demonstrate that service in this case complied with the terms of OCGA § 9-11-4 (f) (1) (A) authorizing service by publication.[12]

Ignoring the foregoing, Akpan nevertheless argues that her motion encompassed all three defendants because they were each named in the case caption and because her counsel's supporting affidavit alleged a "viable claim against each

---

[12] *See Elrod v. Reliance Dev. Corp.*, 350 Ga. App. 113, 118-19 (2) (828 SE2d 126) (2019) (holding that because there was an absence of evidence in the record demonstrating that plaintiff complied with OCGA § 9-11-4 (f) (1), trial court's order granting service by publication was improper); *Vasile v. Addo*, 341 Ga. App. 236, 240-42 (2) (800 SE2d 1) (2017) (same); *Hutcheson*, 317 Ga. App. at 126-28 (1) (same); *Taylor v. Padgett*, 300 Ga. App. 314, 316-18 (1) (684 SE2d 434) (2009) (concluding that because petitioners did not file a written motion for service by publication and supporting affidavit as required by OCGA § 9-11-4 (f) (1) (A), the record failed to support the juvenile court's determination that service by publication was proper).

of the party Defendants." We disagree. A mere case caption is insufficient to satisfy the strict compliance required by OCGA § 9-11-4 (f) (1) (A) for service by publication.[13] Indeed, it strains credulity to suggest that merely including Tracy in the caption of the lawsuit somehow supersedes Akpan's use of "both" in the text of her motion to describe the defendants that the special process server actually attempted to serve. To do so would be to elevate form over substance and divorce "both" from its usual, ordinary meaning of referring to two things.[14] And this reading of the record is especially sensible in light of *both* the sheriff's entry-of-service forms and special process server's affidavits only referencing defendants Dawn and Herbert Shuler.

Akpan also contends Tracy's argument misconstrues OCGA § 9-11-4 (f) (1) (A). Specifically, Akpan attempts to minimize the impact of her failure to attach an affidavit from the special process server detailing any efforts to serve Tracy[15] by maintaining that OCGA § 9-11-4 (f) (1) (A)'s requirement that such efforts be

[13] *See supra* note 12 & accompanying text.

[14] *See* The Oxford English Dictionary Online https://www.oed.com/view/Entry/21867 (February 3, 2022) (defining "both" as meaning "[w]ith reference to two things, people, or groups previously specified: the two (without exception); the one as well as the other").

[15] This is in stark contrast to the import Akpan ascribes to her own counsel's affidavit, which only mentions "defendants" generally.

demonstrated "by affidavit" is nonessential. Indeed, Akpan claims the phrase "by affidavit" could be removed from OCGA § 9-11-4 (f) (1) (A) with no effect and then further contends that an affidavit is just one of many ways a movant can demonstrate that diligent efforts have been made within the meaning of the statute. We find this argument unavailing.

In construing any statute, we must afford the text its plain and ordinary meaning,[16] consider the text contextually,[17] read the text "in its most natural and

---

[16] *Deal v. Coleman*, 294 Ga. 170 172 (1) (a) (751 SE2d 337) (2013); *accord Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *see also Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527) (2015) ("A statute draws it meaning, of course, from its text." (punctuation & citation omitted)); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

[17] *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation & citation omitted)); *Scherr v. Marriott Int'l, Inc.*, 703 F3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) (noting that in statutory construction cases, courts "begin with the language of the statute itself and the specific context in which that language is used" (punctuation & citation omitted)).

11

reasonable way, as an ordinary speaker of the English language would,"[18] and seek to "avoid a construction that makes some language mere surplusage."[19] And reading "by affidavit" in OCGA § 9-11-4 (f) (1) (A) as nonessential, as Akpan argues, would improperly render that phrase mere surplusage.[20] Furthermore, Akpan's contention that an affidavit is just one of many ways a movant may satisfy the due diligence requirement is belied by reading the statute as a whole. In fact, shortly after listing "by affidavit" as the *sole* means of demonstrating due diligence in attempting service, the statute provides that "either [an] affidavit or . . . a verified complaint" may be used to demonstrate that a claim exists against a defendant who is to be served.[21] Needless to say, if our General Assembly wished to permit multiple means of complying with the statute's express due diligence requirement, it knew how to do

---

[18] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Belknap v. Belknap*, 351 Ga. App. 748, 751 (1) (833 SE2d 135) (2019); *Holcomb*, 329 Ga. App. at 518 (1).

[19] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Belknap*, 351 Ga. App. at 751 (1); *Holcomb*, 329 Ga. App. at 518 (1).

[20] *See Kennedy v. Carlton*, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014) (concluding that the General Assembly's express use of a specific term in a statute was intentional and not "mere surplusage" (punctuation omitted)).

[21] *See* OCGA § 9-11-4 (f) (1) (A).

so, and we must presume its failure to do so here was a matter of considered choice.[22]

Moreover, reading the statute in this manner adheres to the longstanding tenets of statutory construction: "*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)."[23] Accordingly, Akpan's failure to provide an affidavit demonstrating diligent attempts to serve Tracy constituted a failure to strictly comply with OCGA § 9-11-4 (f) (1) (A).[24]

---

[22] *See Bauerband v. Jackson Cty.*, 278 Ga. 222, 225-26 (3) (598 SE2d 444) (2004) (noting that use of the language "sums payable in the individual calendar year renewal term" and "annual payments" elsewhere in a statute showed that, "had the General Assembly wished to require that future obligations be set forth as a sum certain [in the instant provision], it knew how to accomplish that"); *Kemp v. Kemp*, 337 Ga. App. 627, 636 (788 SE2d 517) (2016) (explaining that, if the General Assembly had wished to allow trust beneficiaries to seek attorney fees under a particular statute at any time during the litigation, it would have expressly authorized them to do so, and that this Court must also presume that the General Assembly's failure to do so was a matter of considered choice).

[23] *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (punctuation omitted); *see Alexander Props. Grp., Inc. v. Doe*, 280 Ga. 306, 309 (1) (626 SE2d 497) (2006) (holding that based on the principles of *expressum facit cessare tacitum* and *expressio unius est exclusio alterius*, the list of actions in a statute is presumed to exclude actions not specifically listed).

[24] *See Mateen v. Dicus*, 286 Ga. App. 760, 761 (1) (650 SE2d 272) (2007) (noting that pursuant to OCGA § 9-11-4 (f) (1) (A), the trial court may "grant an

Finally, Akpan notes the trial court's order granting default judgment indicated that service by publication was warranted because both the sheriff and special process server had been unable to perfect service upon the "defendants." From this, Akpan reasons that with no transcript of the default-judgment hearing in the record, we must presume the regularity of court proceedings, and thus, there was sufficient competent evidence to support the trial court's findings.[25] But the presumption that a trial court followed the law is just that—a presumption, "which can be rebutted by what is shown in the record."[26] And here, the record is devoid of any evidence that Akpan made diligent efforts to serve Tracy prior to the grant of the motion for service by publication. Moreover, the finding of due diligence "must be made prior to permitting service by publication."[27] Consequently, a finding of due diligence at the default-

order permitting service by publication if, among other things, the affidavit is proper").

[25] *See Popham v. Yancey*, 284 Ga. 467, 468 (667 SE2d 353) (2008) ("In accordance with the presumption of the regularity of court proceedings, we must assume in the absence of a transcript that there was sufficient competent evidence to support the trial court's findings."); *Hunt v. Callahan*, 353 Ga. App. 488, 492 (5) (838 SE2d 133) (2020) (same).

[26] *State v. Abbott*, 309 Ga. 715, 719 (2) (848 SE2d 105) (2020) (punctuation omitted).

[27] *In the Interest of A. H.*, 339 Ga. App. 882, 885 (795 SE2d 188) (2016).

judgment juncture of the case is not sufficient to authorize the trial court's prior order allowing service by publication.[28]

Given the foregoing circumstances, we reiterate that Akpan's service in this case did not comply with the terms of OCGA § 9-11-4 (f) (1) (A) authorizing service by publication.[29] Accordingly, the trial court lacked personal jurisdiction over Tracy Shuler, and therefore, it erred in denying her motion to set aside the default judgment.[30] We therefore reverse the trial court's judgment.

*Judgment reversed. Mercier and Pinson , JJ., concur.*

---

[28] *See id.* at 884-85 (holding that because there was nothing in the record of termination of parental rights proceedings showing that the petitioner made diligent efforts to serve the mother, the trial court's finding during the motion for new trial hearing that mother had made service difficult was not sufficient to authorize the prior service by publication).

[29] *See supra* note 10 & accompanying text.

[30] *See McDade v. McDade*, 263 Ga. 456, 458 (2) (435 SE2d 24) (1993) (holding that because service by publication was invalid, trial court lacked personal jurisdiction over defendant); *Elrod*, 350 Ga. App. at 118-19 (2) (vacating default judgment against defendant because trial court's order granting service by publication was improper and thus court lacked jurisdiction); *Vasile*, 341 Ga. App. at 240-42 (2) (same); *Hutcheson*, 317 Ga. App. at 126-28 (1) (same); *Taylor*, 300 Ga. App. 314, 316-18 (1) (vacating trial court's custody award when it lacked personal jurisdiction over mother due to insufficient service of process in attempting to serve mother by publication).

15